**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, TRANSPORTATION DIVISION,** )<br>)<br>)<br>)<br>) | |
| **Petitioner,** ) | |
| **vs.** ) | **Case No. 20 C 4644** |
| **UNION PACIFIC RAILROAD COMPANY,** ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

SMART Transportation Division (SMART-TD), a labor union, seeks to enforce

three arbitration awards it obtained on behalf of claimants James Koeppen, Casmere

Chambers, and Danny Turpin after they were dismissed from service by Union Pacific

Railroad Company (UPRR).  Finding in favor of the employees, the National Railroad

Adjustment Board ordered UPRR to reinstate the claimants and provided for other

individualized relief.  The claimants later declined reinstatement.  UPRR then terminated

them based on Rule 96 of the collective bargaining agreement (CBA), which authorizes

UPRR to terminate an employee who is absent without leave for more than six months.

SMART-TD subsequently filed this enforcement action against UPRR under the

Railway Labor Act, 45 U.S.C. § 153.  The union contends that UPRR failed to comply

with the arbitration awards when it did not pay the claimants lost wages in accordance

with the awards.  UPRR has moved to dismiss SMART-TD's petition for lack of subject

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  UPRR contends that resolution of the dispute requires interpreting the arbitration award and/or the CBA, which is outside of this Court's jurisdiction.

For the following reasons, the Court denies UPRR's motion to dismiss.  The arbitration award with respect to Koeppen is enforceable, and he is entitled to lost wages.  The Court remands the other two matters, involving claimants Chambers and Turpin, to the adjustment board for the limited purpose of clarifying whether the claimants, who have declined reinstatement and were terminated by UPRR under the CBA, are nevertheless entitled to lost wages.

## Background

SMART-TD is a labor union that represents train service workers employed by the UPRR, a rail carrier subject to the Railway Labor Act.  The Union is authorized by the RLA, 45 U.S.C. § 153, to pursue employee claims that arise under collective bargaining agreements before the National Railway Adjustment Board, an arbitral tribunal.  This petition concerns the claims SMART-TD pursued on behalf of three employees who were dismissed from service by UPRR:  James Koeppen, Casmere Chambers, and Danny Turpin.

### A.     Koeppen award

Count 1 of the Union's petition concerns its claim on behalf of Koeppen, who worked as a yard foreman for UPRR.  SMART-TD contends that Koeppen was wrongfully removed from service and dismissed from employment for allegedly "fail[ing] to use a couple setting when starting movements."  Compl. ¶ 8 (dkt. no. 1).  SMART-TD subsequently filed a claim on Koeppen's behalf, pursuant to CBA procedure.  *Id.* ¶ 9.

SMART-TD sought Koeppen's reinstatement, the payment of vacation allowance for the time he was wrongfully discharged, payment of health and welfare benefits, reimbursement for expenses related to the pursuit of alternative employment, and compensation for lost time. *Id.*

The adjustment board determined that UPRR "failed to consistently and uniformly interpret and apply the rule Koeppen allegedly violated" and abused its discretion by enforcing the rule inconsistently. *Id.* ¶ 12 (citing Pet.'s Ex. A, Koeppen Award at 2 (dkt. no. 1-1)). In the board's view, this warranted rescinding the dismissal UPRR imposed upon Koeppen. *See* Koeppen Award at 2. Thus the board "sustained the claim and specifically ordered that [Koeppen] be 'made whole consistent with the terms requested.'" Compl. ¶ 13 (quoting Koeppen Award at 2). SMART-TD contends that UPRR has refused to pay Koeppen lost wages, despite requests and demands for the UPRR's compliance. *Id.* ¶¶ 14-15.

In response, UPRR contends that following the arbitration award, it mailed a copy of the award and a letter to Koeppen, advising him "of the necessary steps to return to work." Resp.'s Opening Mem. at 5. Koeppen took certain steps to return to work, namely scheduling his return-to-work medical examination, but he failed to report for the appointment and did not reschedule. Because Koeppen did not "protect his service or seniority for over six months," UPRR, pursuant to its authority under Rule 96 of the CBA, terminated him. Rule 96 states:

> LEAVE OF ABSENCE. A trainman having been absent of his own accord to exceed six consecutive months, thereby forfeits all rights with the Company, except in case of sickness, or when leave of absence has been granted. No leave of absence will be granted to exceed one year, except in case of sickness, or when serving as chairman of the General Committee.

Resp.'s Ex. A to Maxwell Decl., Collective Bargaining Agreement at 10 (dkt. no. 10).

## B.     Chambers award

Next, count 2 concerns the union's claim on behalf of Chambers, who worked as a switchman for UPRR.  SMART-TD contends that Chambers "allegedly failed to ensure that the intended route for his move was properly lined up prior to starting the shove movement"; this "resulted in Chambers being removed from service and dismissed from employment" by UPRR.  *Id.* ¶ 19 (quoting Pet.'s Ex. B, Chambers Award at 1 (dkt. no. 1-2)).  UPRR charged Chambers with multiple rules violations.  Chambers Award at 4.

SMART-TD filed a claim on Chambers's behalf, seeking the same relief it sought for Koeppen.  *Id.* ¶ 20.  The adjustment board sustained Chambers's claim and concluded that there was insufficient evidence to support the UPRR's decision to dismiss him.  *Id.* ¶ 23.  The board concluded that his violations of two rules nevertheless warranted certain discipline "short of dismissal."  Chambers Award at 4.  Hence, the board reduced Chambers's dismissal to a thirty-day suspension without pay.  Compl. ¶ 23 (citing Chambers Award at 4).  The adjustment board did not indicate whether Chambers was entitled to any other relief the Union requested on his behalf.  SMART-TD contends that UPRR has refused to pay Chambers lost wages, despite its request for compliance with the arbitration award.  *Id.* ¶¶ 24-25.

UPRR contends that it mailed Chambers a copy of the award and a letter advising him, as it advised Koeppen, about the process of returning to work.  Chambers completed his health and medical examination, but he never returned to work.  Over six months passed and Chambers protected neither his service nor his seniority.

4

Accordingly, UPRR terminated him in accordance with Rule 96 of the CBA.

**C.    Turpin award**

Finally, count 3 concerns SMART-TD's claim on behalf of Turpin, who worked as a foreman for UPRR.  In the petition, SMART-TD does not say why UPRR dismissed Turpin, but the arbitration award states that Turpin was dismissed for "[f]ail[ing] to ensure that the intended route for your move was properly lined up prior to starting the shoving movement."  Turpin Award at 1.  "This alleged action resulted in [the] train moving down the wrong track and impacting the side of [another train]."  *Id.*

In its pursuit of Turpin's claim, SMART-TD sought the same relief that it sought on behalf of Koeppen and Chambers.  Compl. ¶ 30.  The adjustment board sustained Turpin's claim and reduced the discharge to a thirty-day suspension without pay because of insufficient evidence to sustain the charged violations.  *Id.* ¶ 32 (quoting Pet.'s Ex. C, Turpin Award at 4) (dkt. no. 1-3).  The board also concluded that UPRR had abused its discretion and improperly imposed a "severe penalty" on Turpin.  Turpin Award at 4.  The adjustment board did not indicate in the award whether Turpin was entitled to any other relief that the Union requested on his behalf.  SMART-TD contends that it has asked UPRR to comply with the award but that UPRR refuses to pay Turpin lost wages.  Compl. ¶¶ 33-34.

UPRR mailed Turpin a copy of the award and a letter with instructions on returning to work.  Turpin passed his health and medical requirements, but, like Koeppen and Chambers, he did not return to work for UPRR.  More than six months passed, and Turpin protected neither his service nor seniority.  Accordingly, UPRR terminated him based on Rule 96 of the CBA.

**D.    Relief requested**

In its petition, SMART-TD requests the following relief from this Court:  (1) require UPRR and other relevant actors to comply with the awards; (2) make the claimants whole by requiring UPRR to pay their lost wages and benefits; (3) award attorneys' fees and costs pursuant to the RLA; and (4) grant other relief the Court deems just and proper.  *See* Compl. ¶¶ A-D.  UPRR has moved to dismiss SMART-TD's petition for lack of subject matter jurisdiction.  UPRR contends that this Court lacks jurisdiction over the union's petition because it (1) concerns the interpretation of ambiguous arbitration awards, which is exclusively the domain of the arbitration board and (2) requires the interpretation or application of the CBA.  Resp.'s Opening Mem. at 1-2.  Disputes arising under the CBA, UPRR explains, "are minor disputes over which the federal courts lack jurisdiction."  *Id.* at 2.

## Discussion

"This court has very little freedom of movement when a petitioner who has been successful before the National Railroad Adjustment Board comes to us for enforcement of the Board's award."  *Bhd. R. Carmen v. Belt R. Co.*, 658 F. Supp. 136, 138 (N.D. Ill. 1987).  "By the language of the statute we can do only one of two things:  enforce the award or set it aside."  *Id.* (citing 45 U.S.C. § 153 First (p)).  "The grounds on which we can set the award aside are extremely narrow."  *Id.*  Hence, "judicial review in enforcement cases is among the narrowest known to the law."  *Bhd. of Locomotive Eng'rs & Trainmen, Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 822 F. Supp. 2d 793, 798 (N.D. Ill. 2011) (quoting *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970)).

## A. Jurisdictional challenge

UPRR has moved under Rule 12(b)(1) to dismiss SMART-TD's petition for lack of subject matter jurisdiction. Fed. R. Civ. P 12(b)(1). "Federal courts are courts of limited jurisdiction; 'they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.'" *Smart Transportation Div. v. Ne. Ill. Reg'l Commuter Rail. Corp.*, No. 14 C 7828, 2015 WL 1593082, at *1 (N.D. Ill. Apr. 6, 2015) (quoting *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001)). It is SMART-TD's burden as the party invoking federal jurisdiction to establish that this Court has subject matter jurisdiction over its petition. *See Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

"In evaluating a challenge to subject matter jurisdiction, the court must determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "[A] factual challenge lies where 'the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction.'" *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)). In such a case, the movant relies on "external facts [that] call[] the court's jurisdiction into question." *Apex Digital, Inc.*, 572 F.3d at 444. "Where the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence." *Lyles v. Ne. Ill Reg'l Commuter R.R. Corp.*, No. 19 C 3185, 2020 WL 7260801, at *2 (N.D. Ill. Dec. 12, 2020) (citing *Apex Digital, Inc.*, 572 F.3d at 443-44).

UPRR contends that SMART-TD's petition should be dismissed for lack of subject matter jurisdiction because this case concerns a "minor dispute" within the meaning of the Railway Labor Act.  Resp.'s Mot. to Dismiss at 1 (dkt. no. 8). Accordingly, UPRR argues, the dispute must be resolved by the adjustment board, not this Court.  *Id.*  The UPRR's attack on jurisdiction is thus a factual one.

UPRR raises two distinct jurisdictional challenges to SMART-TD's petition.  First, UPRR contends that determining whether the claimants—who initially requested reinstatement yet declined it after the adjustment board ordered their reinstatement— are entitled to lost wages requires the interpretation of ambiguous arbitration awards. UPRR argues that the district court cannot assert subject matter jurisdiction over ambiguous arbitration awards because the resolution of such awards is exclusively the domain of the adjustment board.  Resp.'s Opening Mem. at 1.

Next, UPRR argues that its dispute with SMART-TD implicates the CBA and therefore is a "minor dispute" over which this Court lacks jurisdiction.  *Id.* at 2. Specifically, UPRR contends that Koeppen, Chambers, and Turpin forfeited all of their rights with the company—including the right to lost wages—when they did not return to work and were terminated under Rule 96 of the CBA.  UPRR argues that determining whether and the extent to which they are entitled to lost wages even though they declined reinstatement and forfeiture of their rights requires the application of the CBA. The RLA provides that minor disputes, including grievances based on the CBA, are subject to mandatory arbitration.

At least one other judge in this district has rejected a claim of lack of subject matter jurisdiction in circumstances not dissimilar from those in the present case.  In

*Smart Transportation Division v. Northeast Illinois Regional Commuter R.R. Corp. (Metra)*, No. 14 C 7828, 2015 WL 1593082, at *2 (N.D. Ill. Apr. 6, 2015), Judge Manish Shah held that the rail carrier's "view of subject matter jurisdiction is too narrow." *Id.* "Article III of the United States Constitution authorizes federal court jurisdiction for suits arising under the laws of the United States." *Id.* (citing U.S. Const. art. III, § 2, cl. 1). "Invoking federal law—namely, 45 U.S.C. § 153 First (p)—the union asks this court to enforce the Board's order." *Id.* "This case thus arises under federal law and this court has subject matter jurisdiction under [28 U.S.C.] § 1331." *Id.*

The Court agrees. SMART-TD's petition in this case arises under federal law. SMART-TD invoked a federal statute, 45 U.S.C. § 153 First (p), to enforce arbitration awards with which UPRR has not complied. The RLA specifically "empower[s]" the district courts to "enforce or set aside the [arbitration] order" when "a carrier does not comply [with the order]." 45 U.S.C. § 153 First (p). Accordingly, the Court overrules UPRR's argument that this Court lacks subject matter jurisdiction over the union's petition because it turns on a "minor dispute" concerning rule 96 of the CBA.

**B.    Ambiguous arbitration awards**

UPRR's other primary argument, that this Court cannot enforce an ambiguous arbitration award, has merit with respect to two of the claimants' awards, but it does not present a jurisdictional issue.

Under Seventh Circuit law, "[i]f the award and order are so vague and indefinite that they cannot reasonably be enforced, then we should remand the matter to the Board for clarification." *Bhd. R. Carmen*, 658 F. Supp. at 138; *see also Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 500 F.3d 591, 592 (7th Cir.

2007) ("If an arbitration award is too ambiguous to be enforced, as when the award fails to address a contingency that later arises . . . the district court should if possible send the matter back to the original arbitration panel for clarification. . . .") (internal quotations and citations omitted); *Smart Transportation Division*, 2015 WL 1593082, at *2.  The Seventh Circuit has suggested that remand is a preferable option to "put[ting] the parties to the expense of starting from scratch with a new arbitration by a new panel." *Bhd. of Locomotive Eng'rs & Trainmen*, 500 F.3d at 592.

Importantly, "[a]n award does not become so vague and indefinite as to be unenforceable simply because a party can argue that a portion of it may be unclear or ambiguous."  *Bhd. R. Carmen*, 658 F. Supp. at 139.  "The court can and should resolve any issues of lack of clarity or ambiguity unless those issues implicate an area which is within the special expertise of the Board, such as an interpretation of the collective bargaining agreement or the actual merits of the claim."  *Id.*

The union's petition in this case concerns, at least in part, "post arbitration conduct."  *Am. Train Dispatchers Dep't v. Norfolk S. Ry. Co.*, 857 F. Supp. 1276, 1280-81 (N.D. Ill. 1994).  As previously indicated, there was considerable conduct of potential significance after the adjustment board sustained the claims SMART-TD brought on behalf of Koeppen, Chambers, and Turpin.  The board concluded that the claimants' conduct did not warrant dismissal from service and ordered their reinstatement.  But then none of the claimants returned to work.  In taking that step, the claimants effectively rejected one portion of the relief that each of them had requested from the board.  UPRR then invoked Rule 96 and terminated them.  Now, after the claimants declined reinstatement and were terminated, SMART-TD contends that UPRR failed to

comply with the awards. SMART-TD argues that UPRR owes Koeppen, Chambers, and Turpin lost wages beginning on the date UPRR wrongfully dismissed them and up to the date they declined reinstatement.

The claim SMART-TD pursued on behalf of Koeppen resulted in clearly delineated relief from the adjustment board. The board specifically ordered that Koeppen be "made whole consistent with the terms requested by the [union]." Koeppen Award at 2. UPRR argues, however, that because Koeppen (like Chambers and Turpin) turned down certain relief that he initially sought, the award is ambiguous regarding whether Koeppen is still entitled to other relief previously granted to him by the board. UPRR suggests that the arbitration award "raises bona fide interpretation questions in the wake of post arbitration conduct" and that as a result, "those inquiries must be satisfied by the appropriate adjustment board, not by a district court." Resp.'s Reply Br. at 3 (dkt. no. 16) (quoting *Am. Train Dispatchers Dep't*, 857 F. Supp. at 1280). Accordingly, UPRR argues that resolving the question of whether the awards permit stand-alone recovery of lost wages requires further interpretation by the adjustment board.[1]

UPRR's contention, that it is unclear from any of the arbitration awards whether the claimants may obtain piecemeal relief, or whether the distinct portions of relief stand

---

[1] UPRR appears to suggest in its reply brief that the arbitration awards also require further interpretation because the adjustment board must determine the amount of lost wages due to the claimants. Resp.'s Reply Br. at 5 (describing another case in which a court "determined that when the statement of the claim noted lost wages were 'without deduction of outside earnings,' there was no ambiguity as to the deduction of outside earnings"). An argument that is raised for the first time in a reply brief is forfeited. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). Accordingly, the Court will not consider UPRR's argument.

together, lacks merit. The adjustment board determined that UPRR abused its discretion when it dismissed the claimants. With respect to Koeppen's claim, the board specifically ordered that Koeppen be made whole consistent with terms of his request. The terms of Koeppen's request explicitly included lost wages. Koeppen's award therefore unambiguously entitles him to lost wages beginning from the date UPRR wrongfully dismissed him and up to the date he declined reinstatement.

The adjustment board's orders with respect to Chambers and Turpin are less clear. Those awards certainly adjudicated the propriety of the termination of Chambers and Turpin, but they did not specify any relief other than reinstatement and did not include language similar to that in Koeppen's award indicating adoption of the union's position regarding the relief requested. Accordingly, the awards for Chambers and Turpin are ambiguous, and the Court will remand those matters to the adjustment board for clarification.

As a final matter, the Court notes that at least one other judge of this Court has reprimanded UPRR for failing to comply with an adjustment board decision and then challenging the award as ambiguous in the union's enforcement action, describing UPRR's conduct as seeking "a second bite at the apple." *Bhd. of Locomotive Eng'rs & Trainmen*, 822 F. Supp. 2d at 802-03. "If Union Pacific was unclear about how to interpret the Award, it should have sought an interpretation of the Award from the Board per the mechanisms provided in the RLA." *Id.* at 802 (citing 45 U.S.C. § 153 First (m)). The *Brotherhood of Locomotive Engineers & Trainmen* case concerned bad faith on the part of Union Pacific, namely "mail[ing] a reinstatement letter to an address that it knew was not correct." *Id.* at 802. The Court has not made a finding of bad faith on the part

of UPRR in this case.  Nevertheless, it is worth pointing out that UPRR could have avoided litigation altogether by asking the adjustment board to "interpret the award in light of the dispute" based on its position that the awards are ambiguous.  45 U.S.C. § 153 First (m).

### Conclusion

For the foregoing reasons, the Court denies UPRR's motion to dismiss for lack of jurisdiction [dkt. no. 8].  Upon filing of an appropriate motion, claimant Koeppen will be entitled to enforcement of his award to the extent it requires UPRR to pay him lost wages from the date it wrongfully dismissed him up until the date he declined reinstatement.  With respect to claimants Chambers and Turpin, the Court hereby remands their cases to the National Railroad Adjustment Board for the limited purpose of clarifying whether and the extent to which they are entitled to lost wages pursuant to the board's previous orders for relief.  The case is set for a telephonic status hearing on July 20, 2021 at 8:40 a.m. to set a schedule for further proceedings, using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 8, 2021